IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **WALTER G. CARTER, JR.,** *Plaintiff,* v. **FRANK KENDALL,** *Defendant.* | **CIVIL ACTION NO. 5:23-cv-00210-TES** |

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Relying on various protections provided by federal law, Plaintiff Walter G. Carter, Jr., filed a lawsuit against the Secretary of the Air Force, Frank Kendall, in his official capacity, alleging that Secretary Kendall made unlawful employment decisions based on his race and age. [Doc. 1, pp. 1–7]. Defendant moved to dismiss Plaintiff's Complaint for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5).[1] [Doc. 7]. On December 4, 2023, Plaintiff filed a Response to Defendant's Motion and a Motion *Nunc Pro Tunc* to Enlarge Time to Serve Process [Doc. 8]. The Court held a hearing on the parties' motions on January 23, 2024. [Doc.

---

[1] Defendant also argues that Plaintiff fails to state a claim for retaliation. *See* [Doc. 7, pp. 13–15]. In his Response, however, Plaintiff made clear that he did not include a retaliation claim in his Complaint and asked the Court to deny Defendant's Motion to Dismiss on that issue. [Doc. 8, p. 8]. Given that clarification, the Court **DENIES as moot** Defendant's Motion to Dismiss on the retaliation claim.

15]. For the following reasons, the Court **DENIES** Defendant's Motion to Dismiss [Doc. 7] and **GRANTS** Plaintiff's Motion to Enlarge Time [Doc. 8].

## BACKGROUND

Long story short: Plaintiff alleges that Secretary Kendall (in his official capacity) discriminated against him on the basis of race and age during his employment at Robins Air Force Base as a Non-Destructive Tester. [Doc. 1, pp. 1–7]. However, the merits of this case are irrelevant for now. Instead, the Court must first address several service-of-process issues and decide whether the suit will proceed further. Let's begin by reviewing the procedural road that led us here.

Before filing suit in this Court, Plaintiff initially filed an administrative complaint alleging discrimination with the Department of the Air Force (the "Air Force") in January 2020. [Doc. 1, ¶ 7]. In October 2021, the Air Force issued a Final Agency Decision ("FAD"), which also supplied Plaintiff with an address at Joint Base Andrews in Maryland for serving Secretary Kendall with any potential lawsuit. [*Id*. at ¶ 8]; [Doc. 7-1, pp. 1–2]. Plaintiff appealed to the Equal Employment Opportunity Commission ("EEOC"), which affirmed the FAD in March 2023 and provided Plaintiff with notice of his right to file a civil action within 90 days—by June 14, 2023. [Doc. 1., ¶¶ 10–11]. Plaintiff waited as long as possible, until the 90th day, before he filed suit in this Court. [Doc. 1, p. 8].

As with all lawsuits, Plaintiff was of course required to serve the Defendant (in

this case, Secretary Kendall) within 90 days of filing his complaint. Fed. R. Civ. P. 4(m). But, when suing an officer of the United States like Secretary Kendall, Federal Rule of Civil Procedure 4(i)(2) also required Plaintiff to serve the United States—a somewhat tricky process that involves two steps. Fed. R. Civ. P. 4(i)(2). First, Plaintiff had to either "deliver" *or* "send" (by registered or certified mail) a copy of the summons and complaint to the local United States Attorney. Fed. R. Civ. P. 4(i)(1)(A). Second, Plaintiff had to send (also by registered or certified mail) a copy to the United States Attorney General. *Id*. In other words, as opposed to a lawsuit against a lay defendant, Plaintiff here had to serve three parties: the Attorney General, the local United States Attorney, and, of course, Defendant.

Again, Plaintiff had 90 days to serve those three people—until September 12, 2023. *See* Fed. R. Civ. P. 4(m). Unfortunately for the Court (and everyone involved), Plaintiff waited 86 days to begin the process. *See* [Doc. 8, pp. 1–2]. On September 8, 2023, Plaintiff sent the summons and complaint to Defendant at a Pentagon address in Washington, D.C. by certified mail. [*Id*.]; [Doc. 6, p. 2]. And because Secretary Kendall is a "United States officer . . . sued only in an official capacity," Rule 4(i)(2) required Plaintiff to likewise send a copy of the summons and complaint to the United States Attorney General, Merrick Garland, and the United States Attorney for the Middle District of Georgia, Peter Leary. He did so on the same day, September 8. [Doc. 6-1, p. 3]; [Doc. 6-2, p. 1]; *see* Fed. R. Civ. P. 4(i)(1).

3

Although Plaintiff mailed all three service packages from Washington, D.C. on the same day and at the same time, it took the United States Post Office 10 days (until September 18, 2023) to deliver the package to the Attorney General at his D.C. address, which is literally across town. [Doc. 6-1, p. 3]. And, Secretary Kendall's copy was delivered to The Pentagon in D.C. on September 13, 2023, rather than the Secretary's preferred address in Maryland. [Doc. 8-2, p. 2].

The local United States Attorney's Office, on the other hand, received its initial copy (from Washington, D.C. to Macon, Georgia, no less) in only four days, on September 12, 2023. [Doc. 7-2]. However, on September 19, 2023, the civil process clerk in the office filed a letter informing Plaintiff that he had improperly addressed the letter so that she could not accept it according to the requirements of Rule 4(i). [Doc. 5]; *see* Fed. R. Civ. P. 4(i), Advisory Committee Note, 1993 Amendment. That same day, Plaintiff reissued service with the correct address, and the office received it on September 25, 2023. [Doc. 7-3, p. 1]. Even though Plaintiff knew he was a week past the 90-day service limit when he learned of the address issue on September 19, he didn't seek an extension of time to serve Defendant at that time. *See* [*id*.]; [Doc. 8].

On November 24, 2023, Defendant filed the Motion to Dismiss at issue, arguing that Plaintiff's action should be dismissed for failure to comply with Rule 4(m)'s 90-day time requirement because neither the Secretary, the Attorney General, or the United States Attorney *received* their copies by September 12, 2023. [Doc. 7, pp.

4

5– 6]. And because he, the Attorney General, and the local United States Attorney didn't actually receive their respective package within 90 days, Defendant argues that service on each of them is insufficient as a matter of law so that the Court should dismiss Plaintiff's suit. [*Id*.].

On December 4, 2023, Plaintiff filed a Response to Defendant's Motion and—included in the same document—a Motion *Nunc Pro Tunc* to Enlarge Time to Serve Process [Doc. 8]. That same day—which was the first day Plaintiff learned that Defendant was making an issue out of his sending his package to the the D.C. address and not the Maryland address—Plaintiff also reissued service to the Secretary by mailing a copy to his address at Joint Air Base Andrews in Maryland.[2] [*Id*. at p. 3]; [Doc. 8-2, p. 2].

On January 23, 2024, the Court held an evidentiary hearing on the matter of when service is perfected under Rule 4(i). [Doc. 15]. Ahead of the hearing, the parties filed supplemental briefs in response to questions proffered by the Court regarding issues it felt were the most pressing and important. [Doc. 12]; [Doc. 13]; [Doc. 14].

## **DISCUSSION**

To sue Defendant in his official capacity as an officer of the United States

---

[2] Plaintiff's counsel averred that she "honestly did not recall that the 2021 FAD provided an address," in large part because, instead of filing suit at that time, Plaintiff appealed first to the EEOC, whose decision he did not receive until nearly two years later. [Doc. 8, pp. 7–8].

5

(Secretary of the Air Force), the Federal Rules of Civil Procedure required Plaintiff to not only serve Defendant, but to also serve the United States. *See* Fed. R. Civ. P. 4(i)(2). To serve the United States, Plaintiff needed to properly serve the United States District Attorney for the Middle District of Georgia and the United States Attorney General. *See* Fed. R. Civ. P. 4(i)(1).

Federal Rule of Civil Procedure 4(m) states that if a plaintiff does not timely serve process on a defendant within 90 days after filing the complaint, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified period of time." Here, that deadline fell on September 12, 2023. To be sure, Plaintiff clearly dilly-dallied in meeting that deadline, taking until September 8, 2023, to put the copies of the summons and complaint in the mail. But nevertheless, despite his sluggishness, he met the deadline–at least as to the Attorney General. *See* [Doc. 6-1, p. 2].

In Defendant's Motion to Dismiss, he simply asserts that Plaintiff failed to serve the Attorney General within 90 days because the Attorney General did not *receive* the summons and complaint until September 18, 2023, six days late. [Doc. 7, p. 6]. He offers nothing in the text of the rule or case law to back up his contention. Likewise, Defendant argues that Plaintiff did not perfect service upon the local United States Attorney until September 25, 2023, when the office *received* the correctly addressed envelope. [*Id*.]. After the Court raised the issue in an email and scheduled a hearing on

6

the matter, Defendant doubled down on his position. *See* [Doc. 13].

In his Supplemental Brief filed ahead of the Court's hearing, Defendant primarily argued that Rule 4(i)(1)'s option to "deliver" *or* "send" the summons and complaint to the local United States Attorney simply denotes a distinction between in-person delivery and mailing, but doesn't necessarily mean that service is effective upon mailing. [Doc. 13, p. 2]. However, Defendant's interpretation of Rule 4(i)(1) just doesn't square with its plain text. Rule 4(i)(1) simply requires a plaintiff to serve the local United States Attorney and the United States Attorney General by "sending" the complaint and summons by registered or certified mail. Fed. R. Civ. P. 4(i)(1). Nothing in the rule mentions receipt at all.

Regarding service on the United States, the rule is really quite simple and straightforward:

> (1) *United States*. To serve the United States, a party must:
>
> (A)(i) *deliver* a copy of the summons and of the complaint to the United States attorney for the district where the action is brought —or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—*or*
>
> (ii) *send* a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office; [and]
>
> (B) *send* a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C. . . . .

*Id*. (emphasis added). First things first: The disjunctive nature of Rule 4(i)(1)(A) should be noted. The plain text of Rule 4(i) clearly provides two ways to serve the United States Attorney: (1) *deliver* it to him or (2) *send* it to the civil process clerk at his office. *Id*. And, it goes without saying that when the drafters of the rule provided two different options with two different means of service, they clearly meant the words "deliver" and "send" to mean different things. *See Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022) (holding that to consider the statutory words "prohibit" and "regulates" to mean the same thing would "def[y] our usual presumption that differences in language like this convey differences in meaning") (quoting *Henson v. Santander Consumer USA Inc*., 582 U.S. 79, 86 (2017)); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000) (noting the canon of interpretation that "when Congress uses different language in similar sections, it intends different meanings").

Defendant does not dispute the principle here (that two different words mean two different things), but he does argue that the distinction is that "'deliver' denotes in-person service, and the term 'send' refers to service by registered or certified mail." *See* [Doc. 13, p. 2]. This, however, is a distinction without difference. Under Defendant's interpretation, regardless of whether a plaintiff chooses to serve the United States Attorney under Rule 4(i)(1)(A) or Rule 4(i)(1)(B), what really matters is when the United States Attorney actually received it. In other words, Plaintiff would have to *deliver* it by the 90th day—and he could deliver it by placing it in the United States Attorney's hands

or having the United States Postal Service deliver it to him by the 90th day.

In the Court's view, this interpretation can't pass legal muster because it necessarily renders either "deliver" in Rule 4(i)(1)(A) or "send" in Rule 4(i)(1)(B) superfluous. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) (arguing that no provision "should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence").

Common sense tells us to look at the definitions of these two verbs. Black's Law Dictionary defines "delivery" as:

> **1.** The formal act of voluntarily transferring something; esp., the act of bringing goods, letters, etc. to a particular person or place. **2.** The thing or things so brought and transferred.

*Delivery*, Black's Law Dictionary (11th ed. 2019). As one readily sees, the focus is on the recipient, not the sender. "[B]ringing" it to that person is key. *See id*. "Deliver" gains its significance when the product or item reaches the intended recipient. In other words, the focus is on when the item is received. Applying this definition in the context of Rule 4(i)(1)(A)(i), one can serve the United States Attorney by delivering it to one of the three persons listed in the rule, and it is effective upon the hand-to-hand transfer. When it comes to service on the local United States Attorney, the Government's focus on actual receipt would surely carry the day as the civil process clerk did not *receive* the complaint and summons until after the September 12 deadline. *See* [Doc. 7, p. 6]. But the story doesn't end there because Rule 4 provides an alternative option for serving the local

9

United States Attorney other than delivery: A plaintiff may "send" a copy of the complaint and summons via registered or certified mail, addressed to the civil process clerk at the local United States Attorney's office. *See* Fed. R. Civ. P. 4(i)(1)(A)(ii).

Because the words "deliver" and "send" are listed as two alternative options, it only makes logical and common sense that "send" entails a different concept from "deliver"—or else Congress would have just used "deliver" once again. Turning again to Black's Law Dictionary, we see that "send" means:

> **1.** To cause or direct to go or pass; to authorize to go and act <to send a messenger>. **2.** To cause to be moved or conveyed from a present location to another place; esp., *to deposit (a writing or notice) in the mail or deliver for transmission* by any other usual means of communication with postage or cost of transmission provided for and properly addressed <to send a message>.

*Send*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Applying this definition in terms of Rule 4(i)(1)(B), one reaches the inescapable conclusion that a plaintiff serves the United States Attorney when he "send[s]" the complaint and summons to him by depositing them in the mail (assuming, of course, that he takes the added step of sending via certified or registered mail). Nothing in the text of the rule leads the Court to focus on when the items are received; rather, the clear textual focus remains on when the sender places the summons and complaint in the mail. *See* Fed. R. Civ. P. 4(i).

In his Supplemental Brief, Defendant argues that because certified mail requires the addressee to sign the return receipt, service is not complete until the recipient does

so. [Doc. 13, p. 7]. Defendant cites an Eleventh Circuit case in which the recipient did not sign the return receipt:

> Certified mail is "[m]ail for which the sender requests proof of delivery in the form of a receipt signed by the addressee." *Certified Mail*, Black's Law Dictionary (11th ed. 2019); *see also Republic of Sudan v. Harrison*, –– U.S. ––, 139 S. Ct. 1048, 1057, 203 L.Ed.2d 433 (2019). Service by certified mail therefore requires the addressee or his authorized agent to sign the return receipt. *See Olsen v. Mapes*, 333 F.3d 1199, 1202, 1204–05 (10th Cir. 2003) (agreeing with district court that service was not perfected under Rule 4(i)(1) in part because of unsigned return receipts, but reversing district court's decision to dismiss the case with prejudice); *cf.* Ala. R. Civ. P. 4(i)(2)(C) ("Service by certified mail shall be deemed complete and the time for answering shall run from the date of delivery to the named addressee or the addressee's agent as evidenced by signature on the return receipt.").

*Fuqua v. Turner*, 996 F.3d 1140, 1155 (11th Cir. 2021); *see* [Doc. 13, p. 7]. However, in that case, the recipient never signed the return receipt. *See Fuqua*, 996 F.3d at 1155 ("[T]he District Court, after examining the return receipt 'at enhanced magnification,' found that it was unsigned."). The Court agrees that "service by certified mail is not sufficient unless the recipient actually receives the mail." *Morris v. Wilmington Sav. Fund Soc'y*, 360 F. Supp. 3d 363, 369 (W.D. Va. 2018); [Doc. 13, p. 7 n.5]. But, in contrast to the cases that Defendant cites, the Attorney General signed the receipt on September 18, 2023, and the record also shows that Defendant received his copy on September 13, 2023. [Doc. 6-1, p. 3]; [Doc. 8-2, p. 2].

Defendant makes a compelling case that because the Defendant must respond to a complaint within 60 days of service on the local United States Attorney, it makes more sense to begin the 60-day period from the date of receipt rather than mailing. *See* [Doc. 13, p. 8]; *see* Fed. R. Civ. P. 12(a)(2). However, although the Court acknowledges that there very well may be a gap in the Federal Rules between the effective date of service on the United States under Rule 4(i) and the beginning of the answer period for the United States found in Rule 12(a)(2), that doesn't convince the Court to override the clear canon of construction to interpret two different words in the same section to mean two different things. *See Ysleta Del Sur Pueblo*, 596 U.S. at 698.

Additionally, even if service pursuant to Rule 4(i) is not c*omplete* until all parties receive their copies of the summons and complaint (and sign the receipt in the case of certified mail), that doesn't necessarily mean that service is not and cannot be *effective* on the date that Plaintiff put them in the mail for purposes of Rule 4(m). And while the Court may have very well identified a potential question for some devious civil procedure law professor to use to further torture her students, the Court will leave the actual answer to that question to some most unfortunate law students or associate law professors clawing desperately for tenure. That much-knottier question simply isn't before the Court.[3]

---

[3] At the end of the hearing, the parties agreed that Defendant's answer is due **Monday, March 4, 2024.** The Court thanks the parties for this agreement that so graciously allowed the Court to dodge this question.

With this understanding, let's apply Rule 4(i) to the facts of this case. On September 8, 2023, Plaintiff "sen[t]" his summons and complaint via certified mail to all three parties required to be served under Rule 4(i): the United States Attorney, the Attorney General, and Defendant Kendall. [Doc. 6]; [Doc. 8, pp. 1–2]. The Court begins with the Attorney General.

While Defendant repeatedly complains that the Attorney General did not *receive* his copy until September 18, 2023, the plain text of Rule 4(i) makes the date of receipt – under the facts of this particular case – irrelevant for purposes of Rule 4(m). *See* [Doc. 7, p. 6 ("Plaintiff also served the United States Attorney General after the 90-day deadline expired.")]. All Rule 4(i)(B) requires is that Plaintiff "*send* a copy . . . by registered or certified mail to the Attorney General." And that is exactly what Plaintiff did on September 8, 2023—four days before the deadline. [Doc. 6]; [Doc. 8, pp. 1–2]. Other than the date of receipt, Defendant offers no other complaint or critique of Plaintiff's service upon the Attorney General. *See* [Doc. 7, p. 6]. And as the Court explained, under the plain text of Rule 4(i)(1)(B), the Court finds that Plaintiff timely served the United States Attorney General.[4]

---

[4] If the Court were to dismiss Plaintiff's case, Plaintiff would not be able file a new action due to the running of the statute of limitations. *See* [Doc. 1, p. 8]; 42 U.S.C. § 2000e-5(f)(1). So even if the Court were to side with Defendant and find that service upon the Attorney General was six days late, the Court is unconvinced that six days of tardiness is so deficient that his case should be dismissed—especially when even a dismissal *without* prejudice would effectively function as a dismissal *with* prejudice. *See* Fed. R. Civ. P. 4(m), Advisory Committee Note, 1993 Amendment ("Relief may be justified . . . if the applicable statute of limitations would bar a refiled action[.]").

There are, however, two more people that Rule 4(i) required Plaintiff to serve within Rule 4(m)'s 90-day time limit. And Defendant is correct that Plaintiff ran into a service issue in his attempt to serve the local United States Attorney. *See* [*id.*]. While Plaintiff also mailed (that is, "sent") a copy to the United States Attorney on September 8, 2023, the civil process clerk at the United States Attorney's Office couldn't accept service due to a procedural error.[5] *See* [Doc. 8, p. 1]; [Doc. 5, p. 1]. Namely, the envelope needed to be addressed to the "Civil Process Clerk" in accordance with Rule 4(i), but Plaintiff had addressed it directly to "Peter D. Leary," the United States Attorney. *See* Fed. R. Civ. P. 4(i), Advisory Committee Note, 1993 Amendment ("[T]he authorized mail service must be specifically addressed to the civil process clerk of the office of the United States Attorney."); *see also* [Doc. 6-2, p. 1]. The civil process clerk informed Plaintiff of the issue on September 19, 2023, and that same day, Plaintiff attempted to correct the error by re-sending a new copy correctly addressed to the civil process clerk. [Doc. 6-3, p. 1]; [Doc. 8, p. 2]. At that point—knowing he was a week past the September 12 deadline to serve process—Plaintiff should have asked the Court for an extension to cure his error. But here we are.

---

[5] Keep in mind, under the plain text of Rule 4(i)(1)(B), Plaintiff timely "sent" the complaint and summons because he put them in the mail before the 90 days set by Rule 4(m) and he sent them by certified mail. The fact that the civil process clerk didn't "accept service" on that date doesn't matter because the rule focuses on when the plaintiff sent the summons and complaint, not when she received it. But—and this is a big "but"—Plaintiff's service attempt failed because he didn't comply with the text of the rule mandating that, if he mails it, he must address it to the civil process clerk. *See* Rule 4(i)(1)(B).

On top of that error, Plaintiff mailed the summons and complaint to Secretary Kendall at The Pentagon in Washington, D.C., rather than to the Maryland address that the Air Force had provided in its notice to Plaintiff in October 2021. [Doc. 7-1, pp. 1–2]; [Doc. 8, pp. 7–8]. However, although Plaintiff may not have sent the complaint and summons to Defendant's preferred address, the Court is not fully persuaded that this error constitutes a procedural defect under the Rules of Civil Procedure such that Plaintiff's service failed. True, the Air Force provided Plaintiff with an address for service on the Secretary, but it was buried at the bottom of page 9 of a 10-page document that the Air Force sent Plaintiff two years prior to his filing suit, informing Plaintiff of his right to file a complaint with the EEOC. *See* [Doc. 7-1, pp. 1–2].

Congress knows how to mandate service at a particular location or to a specific person. For example, Rule 4(i) mandates that one who wishes to serve the United States Attorney General must serve him "at Washington, D.C." *See* Fed. R. Civ. P. 4(i)(1)(B). Similarly, Rule 4(i)(1)(A)(ii) mandates that if a plaintiff serves the local United States Attorney via mail, it must be addressed to the civil process clerk in the local office. *See* Fed. R. Civ. P. 4(i), Advisory Committee Note, 1993 Amendment. Congress added no such qualifiers when it prescribed the manner to serve a United States Officer. *See* Rule 4(i)(2). Nothing in the rule speaks of a requirement to serve Defendant at Joint Air Force Base Andrews in Maryland as opposed to The Pentagon. *See id*. And, in Plaintiff's defense, a quick Google search of an address for the Secretary of the Air Force produces

15

results for The Pentagon. Plaintiff's error—if it can be called an error—was certainly not unreasonable.

Further, Plaintiff did not learn that Defendant considered his failure to serve him at the Maryland address fatal to his case until Defendant filed this Motion to Dismiss on November 24, 2023. [Doc. 8, p. 3]. A little over two weeks later, Plaintiff mailed a new copy of the summons and complaint to the Secretary at the preferred address in Maryland, removing all doubt about effective service. [*Id.*]; *see* Rule 4(i)(2) ("To serve . . . a United States officer . . . sued only in an official capacity, a party must . . . *send* a copy of the summons and of the complaint by registered or certified mail to the . . . officer . . . .") (emphasis added).

All that to say, the Court agrees that Plaintiff's service on the United States Attorney was deficient because it occurred more than 90 days after he filed his complaint. And let's assume—purely for the sake of argument—that his attempt to serve Defendant Kendall on September 8, 2023, also failed because he sent it to The Pentagon rather than where the Air Force wanted it sent. Even so, that can't end the Court's inquiry. Scroll a little bit further down in Rule 4(i), and one will find where Congress provided a safety valve or safe harbor of sorts for litigants like Plaintiff who didn't get service just right.

The safe harbor reads: "[I]f the party has served *either* the United States attorney or the Attorney General of the United States," then the Court "*must*" allow him a

"reasonable time to cure [his] failure." Fed. R. Civ. P. 4(i)(4) (emphasis added). So even if service upon the United States Attorney and Defendant were lacking (and the Court agrees it was at least untimely as to the United States Attorney), the rule provides that the Court *must* allow Plaintiff reasonable time to cure the failure because—as the Court has already established—he timely served the Attorney General under Rule 4(i)(1)(B).

Although Plaintiff knew of the service-of-process issue as to the United States Attorney when he was notified on September 19, 2023, so that he arguably should have immediately asked for an extension, Plaintiff nonetheless attempted to correct the error that very day. *See* [Doc. 8, p. 2]. And the Court declines to say that Plaintiff waiting two and a half months—until Defendant raised the issue in early December—to formally ask the Court to approve a one-week extension is an unreasonable amount of time. *See* Order at p. 5, *Washington v. Equifax Info. Servs. LLC*, No. 5:20-cv-00294-MTT, (M.D. Ga. June 24, 2021), ECF. No. 25 (holding that a three-month delay in even beginning to attempt to serve the U.S. Attorney was reasonable when the plaintiff had timely served the Attorney General). Further, when Plaintiff learned that he had mailed the Secretary's copy of the summons and complaint to the "wrong" address, he sent a new copy to the preferred address in Maryland within three weeks. *See id.*; [Doc. 8, p. 3]. "A reasonable time to effect service on the United States must be allowed after the failure is pointed out." *See* Fed. R. Civ. P. 4(i), Advisory Committee Note, 2000 Amendment. Bottom line: the Court must grant a reasonable extension to complete service on the

United States if a plaintiff timely serves either the United States Attorney General or the United States Attorney. Here, Plaintiff timely served the Attorney General, which guaranteed him a reasonable extension to serve the Secretary and the United States Attorney for the Middle District of Georgia. And he has now done so.

## CONCLUSION

When it comes to serving the United States or any of its officers or employees sued only in their official capacity by registered or certified mail, one complies with Rule 4(m)'s 90-day mandate when he puts the copy of the summons and complaint in the mail by the 90th day after filing the complaint. *See* Fed. R. Civ. P. 4(i). Although service is complete upon the intended recipient ultimately receiving the procedurally compliant package, it is nonetheless effective under Rule 4(m) when a plaintiff sends it by certified mail. Here, Plaintiff did just that and therefore properly and timely served the Attorney General. [Doc. 6]; [Doc. 8, pp. 1–2]. Therefore, pursuant to Rule 4(i)(4), the Court **GRANTS** Plaintiff's Motion to Enlarge Time [Doc. 8], allowing Plaintiff a retroactive reasonable time to perfect service upon the United States Attorney and Secretary Kendall—until September 19, 2023, and December 15, 2023, respectively. After granting Plaintiff's Motion to Enlarge Time, the Court finds Plaintiff's service on the United States and Defendant to be sufficient, thus requiring the Court to **DENY** Defendant's Motion to Dismiss [Doc. 7].

**SO ORDERED**, this 25th day of January, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**